UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE RIGHT TO BEAR FARMS LLC & <br> SILLY GOOSE PRODUCTIONS LTD, <br>     Plaintiffs, <br> <br>     v. <br> <br> DeGRENIER CONTRACTING AND <br> PROPERTY MANAGEMENT LLC, <br> CHAD DeGRENIER, & CARIN <br> DeGRENIER, <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Case No. 23-30084-MGM <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO QUASH PLAINTIFF'S [SIC] SUBPOENA TO NON-PARTY GREYLOCK FEDERAL CREDIT UNION AND PLAINTIFFS' MOTION FOR APPROVAL OF ATTACHMENT OF REAL PROPERTY
(Dkt. Nos. 30 & 34)

    I.      Introduction

Plaintiffs The Right to Bear Farms LLC and Silly Goose Productions Ltd. ("Plaintiffs") claim that defendants DeGrenier Contracting and Property Management LLC ("DCPM") and individual defendants Chad DeGrenier and Carin DeGrenier (collectively, "Defendants") failed to meet their contractual obligations to Plaintiffs in the construction of a single-family home and subsequent maintenance of the property. Before the court are: (1) Defendants' motion to quash a subpoena issued by Plaintiffs to non-party Greylock Federal Credit Union for records for a bank account held by the individual defendants; and (2) Plaintiffs' motion for an attachment in the amount of $139,285.70 on real property owned by the individual defendants. For the reasons set forth below, the court denies both motions.

    II.     Relevant factual background

According to Plaintiffs' complaint, Plaintiffs entered into a construction management agreement with DCPM providing, in summary, that DCPM would serve as construction manager for the construction of a sustainable single-family primary residence in Stamford, Vermont (Compl. ¶¶ 17-18). The residence was to be constructed for Susan Sarandon (Compl. ¶ 11). Mr. DeGrenier did not design the residence, but, according to the complaint, he recommended design changes as the project progressed that were accepted (Compl. ¶¶ 16, 38-43). Under the parties' agreement, DCPM was responsible for selecting and managing subcontractors and providing progress reports to Plaintiffs (Compl. ¶ 21). DCPM was also responsible for maintaining accounting records, collecting and transmitting subcontractor invoices to Plaintiffs, and ensuring proper payments to subcontractors (Compl. ¶ 22). Plaintiffs allege, on information and belief, that Ms. DeGrenier was responsible for performing invoicing, accounting, and record-keeping for DCPM related to the project (Compl. ¶ 23).

In or around the summer of 2022, when construction on the project was nearing completion, Mr. DeGrenier proposed that he continue to work at the residence as a caretaker. In the summer of 2022, he sent a proposed caretaker agreement to Plaintiffs (Compl. ¶¶ 50-51; Dkt. No. 36-1). A representative of Plaintiffs signed the agreement ("Agreement") (Compl. ¶ 53; Dkt. No. 36-1). Pursuant to the Agreement, DCPM was paid $125,000 as an initial downpayment and $7,142.85 per month for two months of caretaking work at the property (Compl. ¶ 54).

In November 2022, Ms. Sarandon and her family spent time at the residence and discovered issues with construction and completion (Compl. ¶ 55). Plaintiffs brought these issues to Mr. DeGrenier's attention, but he minimized and did not address them (Compl. ¶ 57). The complaint alleges that, in January 2023, Ms. Sarandon and some friends spent considerable time at the residence and discovered additional issues with construction completion and quality.

Again, these issues were brought to Mr. DeGrenier's attention and again he did not correct or otherwise address them (Compl. ¶¶ 59-60). Thereafter, Ms. Sarandon retained an engineering firm to prepare an investigative report concerning construction completion and quality. The resulting report confirmed numerous issues with construction at the residence that would require completion or correction (Compl. ¶¶ 64-65). Plaintiffs allege self-interested malfeasance in various forms by DCPM and Mr. DeGrenier (Compl. ¶¶ 67-70), and they allege inconsistencies in DCPM's invoicing, accounting, and record-keeping related to the project that they attribute, at least in part, to Ms. DeGrenier's work (Compl. ¶¶ 71-77).

As to caretaking, Plaintiffs further allege that Chad's work pursuant to the Agreement was faulty. They allege that Mr. DeGrenier used approximately $91,000 of the downpayment called for in the Agreement to purchase a snowblower, which he registered in his name, and performed virtually no caretaking work on the premises (Compl. ¶¶ 91-92). According to the complaint, Mr. DeGrenier rescinded the Agreement in or around April 2023 (Compl. ¶ 93). He has not explained what work he performed or returned any part of the downpayment he received (Compl. ¶ 94).

    III.    <u>Discussion</u>

    1. Defendants' Motion to Quash Plaintiffs' Subpoena to Greylock Federal Credit Union

        a. Applicable Legal Standards

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Pursuant to the rule, the court must limit discovery if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *See* Fed. R. Civ. P. 26(b)(2)(C). "The party resisting discovery bears 'the burden of showing some sufficient reason why discovery should not be allowed.'" *HealthEdge Software, Inc. v. Sharp Health Plan*, No. 19-cv-11020-ADB, 2021 WL 1821358, at *2 (D. Mass. May 6, 2021) (quoting *Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.*, 730 F. Supp. 1165, 1186 (D. Mass. 1989)).

"A party has standing to move to quash a non-party subpoena if the information sought by the subpoena implicates a personal right or privilege of the party." *Ponder v. Ocwen Loan Servicing, LLC*, Civil Action No. 19-mc-91215-ADB, 2019 WL 2249675, at *2 (D. Mass. May 24, 2019) (citing *S.E.C. v. Present*, Civil Action No. 14-cv-14692-LTS, 2016 WL 10998438, at *3 (D. Mass. Mar. 11, 2016); *Enargy Power (Shenzhen) Co. v. Xioalong Wang*, Civil Action No. 13-cv-11348-DJC, 2014 WL 2048416, at *2 n.4 (D. Mass. May 16, 2014)).  Defendants, as the moving parties, have "the burden of demonstrating that the material sought by the subpoena is privileged or protected, or that production would result in an undue burden." *Jee Family Holdings, LLC v. San Jorge Children's Healthcare, Inc.*, 297 F.R.D. 19, 20 (D.P.R. 2014).  "The subpoenaing party has the burden of establishing that the requested information is relevant to its claims or defenses." *Id.* (citing *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

    b. Analysis

Plaintiffs' subpoena to Greylock Federal Credit Union ("Greylock") seeks production of all account statements, cancelled checks, and wires for the individual defendants' personal account from October 1, 2022, to January 1, 2024 (Dkt. No. 30-3 at 5). While the subpoena to Greylock requested bank records for any account in the names of Chad DeGrenier or Carin DeGrenier, DCPM's bank records show transfers to an account having the last four digits 3671 ("Account 3671"). There has been no evidence of any personal bank account of the individual defendants other than Account 3671 and no evidence that another account, if any exists, might be relevant in this dispute. Accordingly, the court's decision applies only to the records for Account 3671.

In seeking to quash the subpoena to Greylock seeking production of these records, Defendants do not claim that the records are privileged or otherwise protected from discovery *per se*. Rather, they seek to quash the subpoena for their bank records on the ground that the records are not relevant to Plaintiffs' claims (Dkt. No. 30 at 3). Defendants point out that they have produced DCPM's financial records and that those records include DCPM's cancelled checks to contractors and copies of contractors' invoices, showing the amounts DCPM paid to contractors (and the timing of those payments); and the invoices Defendants submitted to Plaintiffs, along with the amount Plaintiffs paid to DCPM every month (Dkt. No. 30 at 3). Thus, Defendants contend, to the extent Plaintiffs claim that Defendants inflated invoices – and they do (Compl. ¶¶ 72-77) – Plaintiffs already have the information relevant to such a claim (Dkt. No. 30 at 3).

For their part, Plaintiffs point to DCPM's financial records as justification for their request for the information they seek concerning Account 3671. DCPM's bank records, submitted as evidence in support of Plaintiffs' opposition to the motion to quash, show frequent

5

transfers from DCPM's account to Account 3671. The records further show that, as of December 22, 2023, DCPM had less than $100 in its account (Dkt. No. 33-1). Under the construction management agreement between DCPM and Plaintiffs, DCPM was entitled to a payment equal to 15% of the contractor invoice totals (Dkt. No. 33 at 8). Plaintiffs' claims against Defendants include unjust enrichment on the basis that Defendants inflated invoices to secure greater payments for themselves, failed to pay contractors amounts due to them, and charged Plaintiffs for items that were not installed or constructed at the residence. Plaintiffs represent that even if invoices were not inflated, DCPM's records show that amounts substantially exceeding 15% of contractor invoices were transferred to Account 3671. While DCPM bank records are some evidence of how the individual defendants managed and dispersed project funds, DCPM's records only show a partial picture.

      Plaintiffs allege that the individual defendants comingled DCPM funds with the funds in their personal account. DCPM's bank records tend to support that contention. Plaintiffs cannot tell by looking at DCPM records when or to whom the individual defendants made payments or withdrawals from Account 3671 and whether any such payments or withdrawals might be relevant to this case. The court is persuaded that the records of Account 3671 may lead to admissible evidence relevant to Plaintiffs' claims of unjust enrichment and misappropriation based on the alleged failure to pay contractors what was due to them. *See NuVasive, Inc. v. Rival Med., LLC*, CIVIL ACTION NO. 21-11644-DJC, 2022 WL 788615, at *2 (D. Mass. Mar. 15, 2022) (ordering production of bank records of defendants accused of misappropriating funds); *see also Enargy Power (Shenzhen) Co. LTD*, 2014 WL 2048416, at *3 (the court denied so much of the plaintiff's motion as sought the production of some records where plaintiff did not show evidence of comingling of funds and ordered production of an individual defendant's personal

6

bank records that might be admissible to show his participation in a challenged financial transaction).

As to the scope of the request, Plaintiffs have sought to subpoena records for Account 3671 from October 1, 2022, to January 1, 2024.  Ms. Sarandon signed the construction management agreement with DCPM in October 2018 (Dkt. No. 30-1 at 2, 10).  According to the complaint, the relationship between the parties began deteriorating in late 2022 and was terminated in all respects by April 2023.  Plaintiffs sent DCPM a demand letter pursuant to Mass. Gen. Laws ch. 93A on May 12, 2023 (Compl. ¶ 90).  The complaint in the instant case was filed in this court in August 2023.  Plaintiffs' subpoena to Greylock requests records for Account 3671 through January 1, 2024.  In the court's view, Plaintiffs are not entitled to records for Account 3671 beyond May 30, 2023, by which time any on-going business relationship between Plaintiffs and Defendants had definitively ended and Defendants were on notice of the likelihood of litigation related to the project.  Thus, while the court denies Defendants' motion to quash, Plaintiffs are directed to serve a revised Rule 45 subpoena on Greylock that requests records for Account 3671 for the time period from October 1, 2022, through May 31, 2023.

Finally, courts have recognized that a party has a significant privacy interest in personal financial records, although that privacy interest gives way when personal bank records are relevant in a pending matter.  *See, e.g., NuVasive, Inc.*, 2022 WL 788615 at *1 (collecting cases).  The docket in this case does not reflect that the parties have entered into an agreement providing for the confidentiality of materials exchanged in discovery.  Pursuant to a standing order, the presiding District Judge does not adopt proposed confidentiality orders governing discovery practice as orders of the court, but he directs the parties to docket confidentiality agreements and it is the practice of the court to take notice of such agreements.  Plaintiffs may not serve a revised

Rule 45 subpoena on Greylock seeking the production of records for Account 3671 until after the parties have filed an agreed-upon confidentiality agreement. They are directed to do so by no later than July 19, 2024.

    2. Plaintiffs' Motion for Attachment of Real Property.

Relying on the terms of the Agreement, Plaintiffs have moved for approval of an attachment in the amount of $139,285.70 on real property located at 127 Welch Road, Clarksburg, Ma, which is owned by the individual defendants (Dkt. No. 34).

"'In order to obtain an order of pretrial attachment under Massachusetts law, a plaintiff must demonstrate (1) a reasonable likelihood of success on the merits, and (2) a reasonable likelihood of recovering judgment equal to or greater than the amount of the attachment sought over and above any liability insurance shown by defendant to be available to satisfy judgment.'" *Guevara-Salgado v. Hayes-Meninno, LLC*, 125 F. Supp. 3d 379, 387 (D. Mass. 2015) (quoting *Erkan v. N.E. Compounding Pharmacy, Inc.*, Civil Action Nos. 12-12052-FDS, 12-12066-FDS, 2012 WL 5896530, at *1 (D. Mass. Nov. 21, 2012)). The moving party's likelihood of success on the merits weighs most heavily in the calculus. *Erkan*, 2012 WL 5896530, at *1. "The burden belongs to the moving party, who 'must set forth with specificity the underlying facts in support of the attachment.'" *Hayes v. CRGE Foxborough, LLC*, 167 F. Supp. 3d 229, 238 (D. Mass. 2016) (quoting *Aetna Cas. & Sur. Co. v. Rodco Autobody*, 138 F.R.D. 328, 340 (D. Mass. 1991)).

Defendants have not asserted that they have liability insurance that would satisfy a judgment based on Defendants' breach of their obligations under the Agreement. According to the Agreement, Plaintiffs were to pay Mr. DeGrenier an initial downpayment of $125,000.00 due upon receipt of contract and $7,142.85 per month thereafter for caretaking services (Dkt. No. 37

at 9). Plaintiffs contend that they paid Mr. DeGrenier $139,285.70 pursuant to the Agreement, that he used $90,828.00 of these funds to purchase a snowblower that he registered in his name and that he did not meet his caretaking obligations under the Agreement (Dkt. No. 35 at 4-5). Plaintiffs further allege that the Agreement does not provide that Mr. DeGrenier is entitled to retain the downpayment in the event the Agreement is cancelled and that he has not returned any funds to Plaintiffs, although he expressed (equivocally) an intention to do so (Dkt. No. 35 at 5). Plaintiffs' motion is supported by an affidavit attested to by Madison Rosa, Ms. Sarandon's personal assistant (Dkt. No. 36) and attachments thereto (Dkt. Nos. 36-1 through 36-7). Defendants' opposition to Plaintiffs' motion for a prejudgment attachment is supported by an affidavit of Mr. DeGrenier (Dkt. No. 37 at 12-13).

Plaintiffs assert claims based on the Agreement for breach of contract (Count VIII); breach of the implied covenant of good faith and fair dealing (Count IX); and unjust enrichment (Count X).

Plaintiffs have not shown they are likely to succeed on the merits of their claim of unjust enrichment related to the Agreement. "An unjust enrichment claim 'cannot stand where there is an existing express contract, *unless the contract is not valid.*" *Katz v. Belveron Real Estate Partners, LLC*, 28 F.4th 300, 312 (1st Cir. 2022) (quoting *Philibotte v. Nisource Corp. Servs. Co.*, 793 F.3d 159, 167 (1st Cir. 2015) (emphasis added)). So far as appears from the record, the Agreement is an existing express contract and, at least for purposes of the motion before the court, Plaintiffs have not attempted to show that it is invalid.

As to the breach of contract and of the duty of good faith and fair dealing, the evidence before the court is in equipoise. The parties appear to be essentially in agreement that the downpayment due to Mr. DeGrenier upon receipt of the Agreement was for the purchase of

equipment, including equipment that could be used to clear snow. Mr. DeGrenier attests that he used a majority of the downpayment to purchase a Kubota Track Loader, that he retains possession of this equipment, suitably stored, and that he has not used it for any purpose other than providing services to Plaintiffs (Dkt. No. 37 at 12-13, ¶¶ 4-7). While Plaintiffs argue that the Agreement does not provide that the initial down payment was non-refundable (Dkt. No. 36 at 2, ¶ 7-8), in fact the Agreement is completely silent as to any obligation to refund any part of the initial downpayment (Dkt. No. 37 at 9). Furthermore, once it was apparent that litigation was imminent, it would have been imprudent for Mr. DeGrenier to alter the status quo by returning the equipment or selling it and returning funds, at least without some release of claims.[1] *Cf. Packaging Indus, Grp., Inc. v. Cheney*, 405 N.E.2d 106, 111 (Mass. 1980) (the court held that, in ruling on a motion for a preliminary injunction, the court should seek to minimize harm that final relief could not redress by maintaining the status quo such that, after trial, a meaningful decision could be rendered). In addition, counsel for Defendants represented that Mr. DeGrenier purchased supplies connected to snow removal and other routine property maintenance activities with additional funds from the downpayment. While the court acknowledges that Plaintiffs may lack the information to do so at this time, they have not contradicted the representations made on Mr. DeGrenier's behalf about his use of downpayment funds beyond those expended to purchase a major piece of equipment.

Furthermore, Mr. DeGrenier represents, again without significant evidence to the contrary, that he continued to provide caretaking services as called for by the Agreement until

---

[1] At the hearing on Plaintiffs' motion for a prejudgment attachment on real estate, the court suggested that a prejudgment attachment on the equipment purchased by Mr. DeGrenier with a portion of the $125,000 downpayment might be appropriate. Prejudgment attachments on physical property are a not uncommon form of security. *See, e.g., Erkan*, 2012 WL 5896530, at *2 (granting a prejudgment attachment on the corporate defendant's physical assets, including equipment). Plaintiffs expressed no interest in such an attachment.

early April 2023, when, Mr. DeGrenier understood, Ms. Sarandon and her staff "fired him" (Dkt. No. 37 at 13, ¶ 15). According to Mr. DeGrenier, although he performed services pursuant to the Agreement from November 2022 through early April 2023, he was only paid the monthly $7,142.85 fee called for in the Agreement for two of those months, resulting in a deficiency of more than $21,000.00 (Dkt. No. 27 at 13, ¶ 13).

Entry of a prejudgment attachment on real property is a serious matter. In view of the conflicting evidence presented by the parties, the ambiguous and poorly drafted terms of the Agreement that was accepted and executed by Plaintiffs, and Defendants' justifiable need to maintain the status quo as to payments made under the Agreement pending resolution of Plaintiffs' claims, the court finds that Plaintiffs have not satisfied their burden of justifying a prejudgment attachment on real estate owned by the DeGreniers, particularly where the extent of the DeGreniers' potential personal liability, as opposed to DCPM's potential liability, remains to be established.

IV.     Conclusion

For the foregoing reasons, Defendants' Motion to Quash Plaintiff's [sic] Subpoena to Non-Party, Greylock Federal Credit Union (Dkt. No. 30) is DENIED, subject to the conditions set forth herein, and Plaintiffs' Motion for Approval of Attachment of Real Property is DENIED. It is so ordered.

Dated: June 26, 2024                                              Katherine A. Robertson
                                                                   KATHERINE A. ROBERTSON
                                                                   U.S. MAGISTRATE JUDGE