UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE RIGHT TO BEAR FARMS LLC & SILLY GOOSE PRODUCTIONS LTD,
Plaintiffs,

v.

DeGRENIER CONTRACTING AND PROPERTY MANAGEMENT LLC, CHAD DeGRENIER, & CARIN DeGRENIER,
Defendants.

Civil Case No. 23-30084-MGM

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR ORDER OF REPLEVIN
(Dkt. No. 59)

I. Introduction

Plaintiffs The Right to Bear Farms LLC and Silly Goose Productions Ltd. ("Plaintiffs") claim that defendants DeGrenier Contracting and Property Management LLC ("DCPM") and individual defendant Chad DeGrenier ("DeGrenier") (collectively, "Defendants") failed to meet their contractual obligations to Plaintiffs in the construction of a single-family home and subsequent maintenance of the property. Before the court is Plaintiffs' motion for an order of replevin that would authorize Plaintiffs to take possession of a Kubota track loader ("the Kubota") purchased by DeGrenier with part of a $125,000 initial downpayment on a caretaker agreement ("the Agreement") entered into between Plaintiff The Right to Bear Farms LLC and DeGrenier of DCPM (Dkt. No. 60-2).[1] The court heard argument from the parties on September

[1] Carin DeGrenier, Chad DeGrenier's wife, is also named as a defendant in this action. She was not a party to the Agreement and there are no allegations in the complaint that she was involved in negotiating or providing services under the Agreement or in the purchase of the Kubota.

24, 2024 and took Plaintiffs' motion under advisement (Dkt. No. 68).  For the reasons set forth below, the court denies the motion.

II.     Relevant factual background

According to Plaintiffs' complaint, Plaintiffs entered into a construction management agreement with DCPM providing, in summary, that DCPM would serve as construction manager for the construction of a sustainable single-family primary residence in Stamford, Vermont (Compl. ¶¶ 17-18).  In or around the summer of 2022, when construction on the project was nearing completion, DeGrenier proposed that he continue to work at the residence as a caretaker.  In the summer of 2022, he sent a proposed caretaker agreement to Plaintiffs (Compl. ¶¶ 50-51; Dkt. No. 36-1).  A representative of Plaintiffs signed the proposed agreement (Compl. ¶ 53; Dkt. No. 60-2).  Pursuant to the Agreement, Defendants were paid $125,000 as an initial downpayment and $7,142.85 per month for two months of caretaking work at the property (Compl. ¶ 54).  Plaintiffs allege that DeGrenier used approximately $91,000 of the downpayment called for in the Agreement to purchase the Kubota, which he registered in his name, and that he performed virtually no caretaking work on the premises (Compl. ¶¶ 91-92).  According to the complaint, DeGrenier rescinded the Agreement in or around April 2023 (Compl. ¶ 93).  He has not explained what work he performed or returned any part of the downpayment (Compl. ¶ 94).  According to Defendants, the Kubota remains in DeGrenier's possession, and he is not using it for any purpose (Dkt. No. 62 at 2; Dkt. No. 62-2 at 3, ¶ 8).

III.    Discussion

Fed. R. Civ. P. 64(a) provides, in pertinent part, that "throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a

person or property to secure satisfaction of the potential judgment." Replevin is one of the specific kinds of remedies contemplated by Fed. R. Civ. P. 64(a). *See* Fed. R. Civ. P. 64(b).

"To prevail on a replevin claim [under Massachusetts law], a plaintiff must show that (1) the goods in question were unlawfully taken from their owner's possession or have been unlawfully detained (2) the owner has a right to possession and (3) the value of the goods exceeds $20." *Children's Hosp. Corp. v. Cakir*, 183 F. Supp. 3d 242, 248 (D. Mass. 2016) (citing *Wilson v. Estate of Arcese*, No. 07-cv-01461-MAH, 2007 WL 2429607, at *3 (Mass. Super. Aug. 9, 2007)). "'[N]ot only must the plaintiff have the right to possession generally, but he must have the right to immediate, exclusive and unqualified possession of the property as against each defendant.'" *Id.* (quoting *Wilson*, 2007 WL 2429607, at *3). Before property is replevied, the plaintiff seeking to seize the property must post a bond, payable to the defendant, in an amount equal to double the value of the goods. *See* Mass. Gen. Laws ch. 247, § 8.

Plaintiff's complaint does not assert a separate claim or count for replevin. At the hearing, Plaintiffs asked for leave to amend their complaint should the court deem a separate count for replevin in the complaint a necessary prerequisite to an order for replevin. In view of the court's ruling on Plaintiffs' motion, the court leaves aside the question of whether a request for the remedy of replevin must be pled as a separate claim or count in a complaint. After careful consideration, the court denies Plaintiffs' motion for reasons similar to the reasons on the basis of which it denied Plaintiffs' motion for an attachment on real property belonging to the individual defendants.

The parties before the court are consistent in testing Plaintiffs' motion for an order for replevin by the factors that are employed for deciding whether a party is entitled to a preliminary injunction (Dkt. No. 50 at 5-10; Dkt. No. 62 at 4-5). That test shares some of the factors of the

test this court employed in ruling that Plaintiffs were not entitled to an attachment on real estate owned by the individual defendants, *see The Right to Bear Farms v. DeGrenier Contracting & Prop. Mgmt. LLC*, Civil Case No. 23-30084-MGM, 2024 WL 3181491, at *4-5 (D. Mass. June 26, 2024), and the analysis is similar.  A party seeking preliminary injunctive relief must demonstrate a reasonable likelihood of success on the merits, the risk of irreparable harm in the absence of injunctive relief, that the balance of hardships tips in the moving party's favor, and that public interest favors the granting of injunctive relief.  *See, e.g., Russomano v. Novo Nordisk Inc.*, 960 F.3d 48, 52 (1st Cir. 2020).  While "'[t]he moving party's likelihood of success on the merits weighs most heavily in the calculus,'" *The Right to Bear Farms*, 2024 WL 3181491, at *4, "irreparable harm [also] constitutes a necessary threshold showing for an award of preliminary injunctive relief." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) (citing *Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 73 (1st Cir. 2004); *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000)).  "[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008).

Plaintiffs argue they are likely to succeed on the merits of their claims of breach of the Agreement because it is undisputed that Defendants bought the Kubota on behalf of Plaintiffs for use at the property and the Agreement provides that, at its termination, Defendants will return to Plaintiffs any items of property owned by Plaintiffs that is in Defendants' possession (Dkt. No. 60 at 6; Dkt. No. 60-2 at 3).  They claim they will suffer irreparable harm because Defendants are not likely to have the financial wherewithal to pay the judgment to which Plaintiffs claim they are entitled, and the Kubota, a tangible and valuable asset that has been paid for and could be sold to contribute to their recovery, will depreciate before any judgment enters (Dkt. No. 60 at

7-8). For their part, Defendants contend that Plaintiffs have failed to show that they are likely to succeed on the merits of their claims because they have not paid Defendants for all of the caretaking services DeGrenier provided, and because the contract is silent, and therefore ambiguous, as to Defendants' obligation to refund any part of the downpayment (Dkt. No. 62 at 4-5).

The court is not persuaded that Plaintiffs have carried their burden at this point. As the court noted in connection with Plaintiffs' motion for an attachment on real property, the evidence on breach of contract and damages under the Agreement "is in equipoise." *The Right to Bear Farms*, 2024 WL 3181491, at *5. While there does not seem to be a dispute that the initial downpayment called for under the Agreement was for purposes of purchasing equipment that DeGrenier needed to perform caretaking services on the property, the Agreement is silent as to any obligation to refund the downpayment and as to the ownership of equipment and supplies purchased with the downpayment. Further, the extent of Plaintiffs' potential damages is in some dispute. Defendants have represented that DeGrenier provided caretaking services for Plaintiffs for some five months, but was only paid for two months, leaving a deficiency of more than $21,000 and that he used additional funds from the downpayment to purchase supplies and equipment. *See id*. Thus, Defendants have not shown by undisputed evidence that they have "'the right to immediate, exclusive and unqualified possession of the property as against [Defendants].'" *Children's Hosp. Corp.*, 183 F. Supp. 3d at 248 (quoting *Wilson*, 2007 WL 2429607, at *3).

Nor is the court persuaded that Plaintiffs have shown a likelihood of irreparable harm. First, "[a] finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank*

*Equity Fund II*, 370 F.3d at 162 (citing *Regan v. Vinick & Young (In re Rare Coin Galleries of Am., Inc.)*, 862 F.2d 896, 902 (1st Cir. 1988)). Plaintiffs have offered nothing more than speculation about Defendants' financial resources and ability to satisfy any judgment that might ultimately enter in their favor. Second, "[i]rreparable harm most often exists when a party has no adequate remedy at law." *Id.* (citing *Ross-Simons of Warwick, Inc.*, 217 F.3d at 13). Plaintiffs, who seek money damages as a remedy, have an adequate remedy at law. *Id.* Third, the harm Plaintiffs identify is that they will be left with nothing at the end of the day even if they prevail on their claim that Defendants acted in breach of the Agreement. "That sort of statement can be made by virtually every person who sues another for money damages. Its very ubiquity indicates why is cannot conceivably be enough to justify the issuance of a prejudgment injunction of this nature." *Id.*

Taking into account the conflicting evidence about the extent of Plaintiff's entitlement to recovery, the ambiguous and poorly drafted terms of the Agreement that was accepted and executed by Plaintiffs, and Plaintiffs' failure to show irreparable harm, this court stands by its prior conclusion that it is appropriate "to maintain the status quo as to payments made under the Agreement pending resolution of Plaintiffs' claims," *The Right to Bear Farms LLC*, 2024 WL 3181491, at *5, particularly where the parties have informed the court that they seek to mediate their dispute, the mediation is intended to encompass Plaintiffs' damages, if any, under the Agreement, and the court has stated its expectation that mediation will be scheduled by no later than January 17, 2025 (Dkt. No. 67).

IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Order of Replevin (Dkt. No. 59) is DENIED.

It is so ordered.

Dated: October 24, 2024

Katherine A. Robertson
KATHERINE A. ROBERTSON
U.S. MAGISTRATE JUDGE